DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| WILLIAM N. TYQUIENGCO,<br><br>                      Plaintiff,<br>vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner, Social Security Administration,<br><br>                      Defendant. | CIVIL CASE NO. 12-00007<br><br>**ORDER & OPINION RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT & DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Before the court are the Motion for Summary Judgment filed by Plaintiff William N. Tyquiengco ("Plaintiff") and the Cross-Motion for Summary Judgment filed by Defendant Commissioner of Social Security ("Commissioner"). *See* ECF Nos. 21, 24. On March 20, 2014, the parties appeared before the court for a hearing on the above motions and rested on the briefs. After reviewing the parties' briefs, relevant cases and statutes, and having heard argument from counsel on the matter, the court hereby **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** the Commissioner's Cross-Motion for Summary Judgment, and **REMANDS** the matter for further administrative action consistent with this decision.

# I. BACKGROUND

## A. Factual Background

Plaintiff was born in 1961 and is currently 52 years old. He was 44 years old on his alleged onset date and 49 years old at the time of the hearing before the Administrative Law Judge ("ALJ"). Plaintiff is a high school graduate, and from 1992 to 2001, he was employed as a transmission technician.

In 2001, Plaintiff was incarcerated. While incarcerated, Plaintiff was diagnosed with diabetes, which had not stabilized by the time he was released in November 2005 as his body was resistant to his medication. Upon release, Plaintiff received treatment at public health facilities in California while living with his brother, and unsuccessfully looked for employment. Plaintiff permanently returned to Guam in 2008.

## B. Administrative Proceedings

In October 2007, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act ("Act") and supplemental security income payments under Title XVI of the Act, alleging he became disabled on January 1, 2006. *See* Certified Transcript of Administrative Record at 233–49, ECF No. 14-4 [hereinafter R.]. On February 11, 2008, the Commissioner denied Plaintiff's applications. R. at 63–73, ECF No. 14. Subsequently, Plaintiff requested reconsideration, which was denied on May 20, 2008. R. at 74, 78–89, ECF No. 14-1.

Plaintiff requested a hearing before an ALJ, which was held on October 12, 2010. R. at 31–55, ECF No. 14. Plaintiff and an independent vocational expert ("VE") testified at the hearing. On November 11, 2010, the ALJ found that Plaintiff was not disabled as defined by the Act from his alleged onset date of January 1, 2006 through the date of the decision. Plaintiff requested a review of the ALJ's decision by the Appeals Council, which was denied on January 27, 2012.

**C. The ALJ's Decision**

The initial issue decided by the ALJ was whether the insured status requirement[1] was met. The ALJ determined that Plaintiff remained insured through December 31, 2006, so he "must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." R. at 15.

The ALJ then engaged in the five-step sequential evaluation process required under 20 C.F.R. § 404.1520(a)(4)(i)–(v) to determine whether or not Plaintiff was disabled.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2006, the alleged onset date.

At step two, the ALJ determined that Plaintiff had the severe impairments of diabetes mellitus with peripheral neuropathy and hypertension.

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that he would require a sit/stand option with approximately 30 minutes maximum in each position, would be limited to lifting no more than 40 pounds, and would be precluded from working at unprotected heights and work that requires balance. The ALJ also determined that Plaintiff could not perform any past relevant work.

At step five, the ALJ found that Plaintiff had acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy in light of Plaintiff's age (44 years old on alleged disability onset date, which

---

[1] Section 423 of the Social Security Act provides that every individual who (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) is a United States citizen or national, (4) has filed an application for disability insurance benefits, and (5) is under a disability "shall be entitled to a disability insurance benefit[.]" 42 U.S.C. § 423(a)(1).

- 3 -

1  is defined as younger individual age 18–49), education (high school education and able to speak
2  English), work experience (transmission technician), and RFC (medium work with certain
3  limitations). The ALJ relied on the VE's testimony that someone with Plaintiff's age, education,
4  past work experience, and RFC was capable of performing the cashier II occupation, specifically
5  jobs that are performed in a booth or kiosk, which allows the individual to sit and stand at will.
6  Based on this testimony, the ALJ determined that Plaintiff was not disabled.

### D. Procedural Background

On May 14, 2012, Plaintiff filed the Complaint, seeking judicial review of the Commissioner's decision. *See* ECF No. 1. On September 13, 2012, the Commissioner filed the Answer. *See* ECF No. 10.

On January 11, 2013, Plaintiff filed the instant Motion for Summary Judgment ("Motion"). *See* ECF No. 21. Therein, Plaintiff requests the court to reverse the Commissioner's decision and remand for immediate payment, or alternatively, remand for further administrative proceedings. In response, the Commissioner filed the Cross-Motion for Summary Judgment ("Cross-Motion") on March 11, 2013. *See* ECF No. 24. Plaintiff filed his Response to the Cross-Motion ("Response") on April 4, 2013. *See* ECF No. 26.

## II. JURISDICTION AND VENUE

The court has jurisdiction to review final decisions of the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Venue is proper in this judicial district, the District of Guam, because Plaintiff resides in Guam. *See* 42 U.S.C. § 405(g).

## III. APPLICABLE LEGAL STANDARD

A "district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it's not supported by substantial evidence

or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g) and *Batson v. Comm'r. of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)). "This is a highly deferential standard of review: 'Substantial evidence' means more than a mere scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (internal quotation marks and citation omitted).

"The court must consider the record as a whole and weigh both the evidence that supports and the evidence that detracts from the ALJ's factual conclusions." *Gutierrez v. Comm'r. of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). "If the evidence can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Id*. (internal quotation marks and citation omitted).

## IV.  DISCUSSION

Plaintiff asserts that the "overriding issues" with the ALJ's decision are as follows:

(1) the ALJ's finding that Plaintiff had the residual functional capacity to perform "medium work" is not supported by substantial evidence;

(2) because Dr. Espino limited Plaintiff to no more than four total hours of work per day, Plaintiff has shown he could not sustain work activity as required;

(3) the ALJ's stated reasons for not fully accepting Dr. Espino's consultative examination report opinion are neither factually accurate nor substantively sustainable;

(4) the ALJ had no authority to base a finding of non-disability and non-credibility on a view that a treating physician should have continued to prescribe medication for an off-label condition when at least one physician stated that he or she should not;

(5) the ALJ's statement regarding "total disability" has no substantive value;

1     (6) the ALJ wrongly acted as a medical diagnostician;

2     (7) there are unresolved conflicts between the vocational testimony relied upon by the ALJ as the basis for his step-five denial and the *Dictionary of Occupational Titles*;

3     (8) the ALJ's inclusion of a "reasonable accommodation" is impermissible at step five; and

4     (9) by virtue of not factoring all of Dr. Espino's opinion, the ALJ relied upon answers to an improper hypothetical question as the basis for his ultimate findings and conclusions.

Pl.'s Mem. at 2, ECF No. 21.

## A. Step Four: Residual Functional Capacity Finding

Plaintiff argues that the ALJ's finding that he had the residual functional capacity ("RFC") to perform medium work is not supported by substantial evidence. Pl.'s Mem. at 10. Specifically, Plaintiff contends that the ALJ made the following errors: (1) the three limitations included in the ALJ's RFC finding were self-contradictory to the definition of "medium work"; and (2) the ALJ's stated reasons for not fully accepting Dr. Espino's opinion report are not factually accurate or substantively sustainable.

### 1. Range of "Medium Work"

At step four, the ALJ determined that Plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), *except* that he would require a sit/stand option with approximately 30 minutes maximum in each position, would be limited to lifting no more than 40 pounds, and would be precluded from working at unprotected heights and work that requires balance. Plaintiff argues that due to these three limitations, the ALJ's RFC finding was self-contradictory to the definition of "medium work" and that Plaintiff cannot perform "medium work" as defined.

In support of his argument, Plaintiff cites the following:

> *…in order for an individual to do a full range of work at a given exertional level*, such as sedentary, the individual must be able to perform substantially all of the exertional and

nonexertional functions required in work at that level.

Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level.

SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996) (emphasis added). However, the ALJ never determined that Plaintiff was able to do the *full range* of medium work. Rather, the ALJ determined that Plaintiff has the residual functional capacity to perform medium work *with certain limitations*. Accordingly, the ALJ's RFC finding of medium work with certain limitations is not necessarily self-contradictory.

### 2. ALJ's Consideration of Dr. Espino's Opinion

#### a. Legal Standard

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. [W]here the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2008) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995)) (internal citations and quotation marks omitted).

In social security cases, there are three types of medical opinions: (1) those from treating physicians who treat the claimant, (2) those from examining physicians who examine but do not treat the claimant, and (3) those from nonexamining physicians who neither examine nor treat the claimant. *Valentine*, 574 F.3d at 692 (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "Where a treating or examining physician's opinion is contradicted by another doctor, the [Commissioner] must determine credibility and resolve the conflict." *Id.* (alteration in original) (citation and internal quotation marks omitted).

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830. "The opinion of

an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Id.* (citations omitted). The uncontradicted opinion of a treating or examining physician "may be rejected only for 'clear and convincing' reasons." *Id.* (citation omitted). "[T]o reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician, an ALJ still must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* (internal quotation marks and citation omitted). Similarly, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31 (citation omitted).

### b. Four-hour Limitation

In his decision, the ALJ found that "Dr. Espino's assessment of the claimant's capacity to engage in residual functional activity is ambiguous and not fully supported by the medical evidence." R. at 20. In support of his finding, the ALJ noted that progress notes for a clinical visit in the same month as Dr. Espino's examination documented an eighty percent decrease in Plaintiff's pain with the use of Neurontin and that "[n]one of the claimant's treating physicians has suggested that the claimant is precluded from engaging in all work activity." *Id.*

The ALJ found Dr. Espino's assessment was "ambiguous." However, the decision did not expound on what part of Dr. Espino's assessment was ambiguous. It is unclear from the decision if the ambiguity referred to by the ALJ was: (1) whether Dr. Espino limited Plaintiff to a total of four hours of work per day or limited each separate action (i.e., standing, walking, sitting) to four hours in an eight-hour workday, or (2) the reasoning underlying Dr. Espino's assessment that Plaintiff is limited to a total of four hours of work per day.[2]

---

[2] At the hearing, counsel for the Commissioner argued that the court could infer that the ambiguity the ALJ referenced was whether Dr. Espino limited Plaintiff to a total of four hours of work per day or limited each separate action of sitting, standing, and walking to four hours in an eight-hour workday. However, in his decision, the ALJ

- 8 -

The Ninth Circuit has stated that "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Accordingly, "where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591. Therefore, to the extent that the ambiguity is regarding four total hours of work as opposed to four hours for each separate action in an eight-hour workday, then the ALJ's decision must be affirmed if the evidence is susceptible to more than one rational interpretation. However, if the ambiguity referred to by the ALJ is the reasoning underlying Dr. Espino's assessment that Plaintiff is limited to a total of four hours of work per day, then at the very least the ALJ must articulate "specific and legitimate reasons that are supported by substantial evidence in the record" to reject that portion of Dr. Espino's opinion.

Because the ALJ did not clearly explain what was ambiguous in Dr. Espino's assessment, the court cannot determine whether the ALJ applied the correct legal standard and properly weighed Dr. Espino's medical opinion. As a result, the court cannot determine whether the ALJ's RFC finding is supported by substantial evidence. Accordingly, the court **REMANDS** the matter so that the ALJ can reassess the medical opinion of Dr. Espino, provide sufficient explanation regarding any ambiguity he may find in Dr. Espino's assessment, and provide sufficient reasons under the applicable legal standard for either resolving any ambiguity or rejecting any portion of Dr. Espino's medical opinion.

### B. Step Five: Ability to Perform Any Other Work

Plaintiff also argues that the ALJ's finding of nondisability is erroneous because the ALJ (1) relied on Grid Rule 203.30 and the ALJ did not properly consider Social Security Ruling 83-

---

only afforded "some weight" to Dr. Espino's opinion and found that the assessment was "not fully supported by the medical evidence" despite the fact that all the limitations the ALJ included in the RFC determination were based upon Dr. Espino's opinion. *See* R. at 20. As this could support the inference that the ambiguity referred to by the ALJ was the reasoning underlying Dr. Espino's assessment, the court finds that it cannot infer what the ALJ found to be ambiguous in Dr. Espino's assessment.

12; (2) did not resolve the conflict between the vocational testimony and the *Dictionary of Occupational Titles*; (3) impermissibly included a "reasonable accommodation" in his RFC finding; and (4) relied upon an improper hypothetical question as the basis for his ultimate findings and conclusions.

### 1. Grid Rule 203.30 and SSR 83-12

Plaintiff argues that the ALJ improperly relied on Grid Rule 203.30[3] and did not consider SSR 83-12 in finding that Plaintiff is not disabled. *See* Pl.'s Mem. at 12–13, ECF No. 21. Under the sequential evaluation process, if the claimant has a severe medically determinable impairment which prevents him from performing past relevant work, the ALJ must decide whether he can do other work. The "Medical-Vocational Guidelines…contain numbered table rules which direct conclusions of 'Disabled' or 'Not disabled' where all of the individual findings coincide with those of a numbered rule." SSR 83-12, 1983 WL 31253, at *1 (Jan. 1, 1983). However, "[w]here an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined…the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability." *Id*. at *2. Thus, the purpose of SSR 83-12 was "[t]o clarify policies applicable in using the numbered table rules…as a *framework* for adjudicating claims in which…the individual's residual functional capacity (RFC) does not coincide with any one of the defined exertional ranges of work." *Id*. at *1 (emphasis added).

In such instances, the ALJ "will consider the extent of any erosion of the occupational base and access its significance." *Id*. at *2. Specifically with respect to alternate sitting and standing, SSR 83-12 notes that "[i]n cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base." *Id*. at *4.

---

[3] Grid Rule 203.30 is applicable to younger individuals with a maximum sustained work capability limited to "medium work," high school graduate or more, skilled or semiskilled, and transferable skills.

- 10 -

Here, the ALJ did consult a VE to clarify the implications for the occupational base due to Plaintiff's requirement to alternate sitting, standing, and walking. In his decision, the ALJ noted that "[w]hen the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a *framework* for decisionmaking[.]" R. at 21 (emphasis added) (citing SSRs 83-12, 83-14). The ALJ concluded that "a finding of 'not disabled' is appropriate under the *framework* of Medical-Vocational Rules 203.30." R. at 22 (emphasis added). It is clear from the ALJ's decision that he did consider SSR 83-12 and did not rely solely on Grid Rule 203.30. Rather, he used the rule as a *framework* for making his decision and consulted with the VE to clarify implications for the occupational base since Plaintiff's condition required him to alternate sitting, standing, and walking. Accordingly, the ALJ did not err in this regard.

### 2. Conflict Between Vocational Testimony and the *Dictionary of Occupational Titles*

Plaintiff contends that the ALJ did not comply with the requirements of SSR 00-4p by (1) failing to ask the VE about possible conflicts between the VE evidence and the *Dictionary of Occupational Titles* ("DOT"), and (2) not resolving the conflicts between the VE evidence and the DOT in the decision. Pl.'s Mem. at 20, ECF No. 21. Specifically, Plaintiff argues that the VE's testimony, in answer to the ALJ's hypothetical question, that an individual could perform the occupation of "Cashier II" while alternating positions no less than every 30 minutes conflicts with the DOT.

SSR 00-4p provides that the SSA utilizes the DOT at steps four and five in making disability determinations, and that the SSA may also use a VE or vocational specialist ("VS") "to resolve complex vocational issues." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). It also provides that "[w]hen a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflict

- 11 -

between that VE or VS evidence and information provided in the DOT." *Id.* at *4 (emphasis added). SSR 00-4p further provides:

> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. *The adjudicator will explain in the determination or decision how he or she resolved the conflict*. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

*Id.* (emphasis added).

The Ninth Circuit has stated that failure to ask the VE whether her testimony conflicted with the DOT may be harmless error if there "were no conflict, or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts." *Massachi v. Astrue*, 486 F.3d 1149, 1154 n.19 (citing *Johnson v. Shalala*, 60 F.3d 1428 (9th Cir. 1995)). In *Johnson*, the Ninth Circuit held that "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." 60 F.3d at 1435. "Brief and indefinite testimony" and "speculative explanations" do not constitute "persuasive evidence." *Coleman v. Astrue*, 423 F. App'x 754, 756 (9th Cir. 2011) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008)).

In *Coleman*, the claimant needed to alternate between sitting, standing, and walking on an hourly basis. 423 F. App'x at 756. Although under the DOT, sedentary work involves sitting most of the time and light work requires walking or standing to a significant degree, the VE testified that the claimant could perform certain sedentary and light occupations, creating an apparent conflict. *Id*. The Ninth Circuit found that the "VE's explanations for this testimony were brief, and so far as the record reveals, involved uninformed guesswork about the nature of the specified occupations." *Id*. The court concluded that "[s]uch speculative explanations are insufficient to reconcile the conflict." *Id*.

In *Buckner-Larkin v. Astrue*, the claimant required an at-will sit/stand option. 450 F. App'x 626, 627 (9th Cir. 2011). The VE "noted that although the DOT does not discuss a sit-stand option, his determination was based on his own labor market surveys, experience, and research." *Id*. at 628. As the conflict was addressed and explained by the VE and addressed in the ALJ's decision, the Ninth Circuit found that the VE's conflicting testimony was properly considered. *Id*. at 628–29.

Here, the ALJ posed a hypothetical question to the VE that included limitations consistent with the ALJ's RFC finding, such as the sit/stand option. R. at 48. In response, the VE testified that with those limitations an individual would be able to perform the unskilled occupation of cashier II, but she "would like to limit that to the kind of people who work in a booth." *Id*. The VE then provided the number of positions available on Guam and nationwide and confirmed that these numbers reflect consideration of the sit/stand option, explaining that "[i]f you're working in a parking kiosk, or if you're someplace where you're in one of those little booths ringing things up for people, you can pretty much sit and stand at will." *Id*.

The ALJ failed to ask the VE whether her testimony conflicted with the DOT, but such a procedural oversight constitutes harmless error if there is no conflict or if the VE provides sufficient support of her conclusion as to justify any potential conflicts. Although the ALJ found that the VE's "testimony is consistent with the information contained in the Dictionary of Occupational Titles" in his decision, R. at 21, the VE's testimony is in apparent conflict with the DOT, which does not discuss sit/stand options. *See Buckner-Larkin*, 450 F. App'x at 628. Therefore, the ALJ erred in this regard.

At the hearing, the VE addressed the apparent conflict by limiting her testimony regarding cashier II positions to those in parking kiosks or booths because "you can pretty much sit and stand at will." R. at 49. However, since the VE did not explain how she came to the

conclusion that the cashier II kiosk and booth positions offered an at-will sit/stand option, the explanation in this case is more similar to *Coleman* than *Buckner-Larkin*.

The ALJ did not ask the VE whether her testimony conflicted with the *DOT* and, if so, whether there was a reasonable explanation for the conflict. The ALJ erroneously concluded that the VE's testimony did not conflict with the DOT, and the VE did not adequately address and explain the conflict. Therefore, the court cannot determine whether the ALJ properly relied on the VE's testimony. As a result, the court cannot determine whether substantial evidence supports the ALJ's step-five finding that Plaintiff could perform other work. Accordingly, the error was not harmless and the court hereby **REMANDS** the matter so that the ALJ can make the appropriate inquiries under SSR 00-4p.

### 3. Reasonable Accommodation

Plaintiff argues that the ALJ's inclusion of a "reasonable accommodation" in the RFC finding is impermissible at step five, and thus, his finding that Plaintiff is not disabled is unsustainable. Pl.'s Mem. at 24, ECF No. 21. The "reasonable accommodation" language is found in the following paragraph of the ALJ's decision:

> As for the opinion evidence, some weight is afforded the opinion of Dr. Espino in that it is based on actual examination of the patient. In a pre-hearing brief, the claimant's representative argued that Dr. Espino's report proposed that the claimant could only work four hours a day (Exhibit 10E). I find Dr. Espino's assessment of the claimant's capacity to engage in residual functional activity is ambiguous and not fully supported by the medical evidence. Although the claimant would require *reasonable accommodation* with regard to changing positions for comfort because of peripheral neuropathy, progress notes for a clinical visit in the same month as the consultative examination conducted by Dr. Espino was done document an 80% decrease in the claimant's pain with the use of Neurotonin (Exhibit 3F). None of the claimant's treating physicians has suggested that the claimant is precluded from engaging in all work activity.

R. at 20 (emphasis added).

In distinguishing the Americans with Disabilities Act and the Social Security Act, the Supreme Court stated that when the Social Security Administration "determines whether an

individual is disabled for SSDI [Social Security Disability Insurance] purposes, it does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802 (1999). Reasonable accommodations may include: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations." *Id*. (quoting 42 U.S.C. § 12111(9)(B)).

In the decision, the ALJ used the term "reasonable accommodation" to describe the limitation he included in the RFC determination that Plaintiff required "a sit/stand option with approximately 30 minutes maximum in each position." R. at 18. Inclusion of the limitation regarding the sit/stand option in the RFC assessment is not impermissible. *See* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) ("The extent of the erosion [of the occupational base] will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."). Accordingly, the ALJ did not err in this regard.

### 4. Hypothetical Question

Plaintiff contends that the ALJ relied upon answers to an improper hypothetical question as the basis for his ultimate finding that Plaintiff is not disabled because the hypothetical question did not factor in Dr. Espino's opinion that Plaintiff could only work for a total of four hours.

As discussed above, it is unclear whether the ALJ permissibly weighed Dr. Espino's medical opinion. As the court is unable to determine whether Dr. Espino's opinion was

1 | permissibly weighed, it cannot determine whether the hypothetical question posed by the ALJ
2 | reflected all of the claimant's limitations. Accordingly, the court cannot determine whether the
3 | ALJ's reliance on the VE's answers to the hypothetical question was improper.

### V. CONCLUSION

Based on the foregoing, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** the Commissioner's Cross-Motion for Summary Judgment. It is hereby ordered that judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** the matter for further administrative action consistent with this decision.

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
   Chief Judge
**Dated: Mar 21, 2014**